IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW BEWLEY and RYAN BEWLEY, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) Case No.: 1:23-CV-15570 |
| | ) |
| THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiffs, Matthew Bewley and Ryan Bewley (hereinafter referred to collectively as "Bewleys" or "Plaintiffs"), by their attorneys, Dominique Price, Daniel McGrath, and Marcos Reilly of Hinshaw & Culbertson LLP, bring this Complaint and Demand for Jury Trial against Defendant, The National Collegiate Athletic Association (hereinafter referred to as "NCAA" or "Defendant"), to obtain redress regarding Plaintiffs' eligibility to compete in intercollegiate athletics, and in support thereof, state as follows:

**INTRODUCTION**

1. Matthew and Ryan Bewley are 19-year-old twin brothers, and standout basketball prospects from Ft. Lauderdale, FL.

2. Like many top basketball prospects, the Bewleys' athletic talent afforded them the opportunity to attend high school at an elite basketball academy, Overtime Elite Academy ("OTE") in Atlanta, GA.

3.  OTE and other programs like it provide unique opportunities for select athletes to compete against each other, while receiving the high level coaching, training, and nutrition that are integral to their development. They also receive a high quality education with small class sizes and one-on-one tutoring.

4.  Upon graduation from OTE, the Bewleys accepted athletic scholarship offers from Chicago State University to continue their basketball journey as members of Chicago State's Men's Basketball Program. However, to date, that journey has been derailed by Defendant, the NCAA.

5.  Over four months after the Bewleys initially applied for eligibility to compete in intercollegiate athletics through a process known as Amateurism Certification and less than a week prior to their first scheduled game, the NCAA issued its decision determining that the Bewleys were ineligible. *See* Final Non-Qualifier Status, attached hereto as Exhibit A.

6.  The NCAA issued this decision several months after it reached the opposite decision for some of the Bewleys' former classmates and teammates at OTE.

7.  On July 12, 2023, freshman, Rob Dillingham, a fellow graduate of OTE, made his debut for the University of Kentucky Wildcats basketball program in an exhibition game against Germany during the 2023 GloblJam, in Toronto, ON.

8.  The NCAA permitted Mr. Dillingham to participate in this competition despite the fact that he played for and received monetary compensation from OTE prior to enrolling at the University of Kentucky.

9. Mr. Dillingham was declared eligible to compete in intercollegiate athletics by the NCAA through the same certification process that recently denied the Bewleys.

10. The decision to certify Mr. Dillingham's amateur status was made possible because of the NCAA's July 1, 2021 uniform interim policy on Name, Image, and Likness ("NIL") which states,

> "For institutions in states with NIL laws or executive actions with the force of law in effect, if an individual or member institution elects to engage in an NIL activity that is protected by law or executive order, the individual's eligibility for and/or the membership institution's full participation in NCAA athletics will not be impacted by application of NCAA Bylaws unless the state law is invalidated or rendered unenforceable by operation of law."[1]

11. By certifying Mr. Dillingham and other former OTE athletes[2], the NCAA determined that competing for OTE and receiving compensation from OTE was permissible under its interim policy.

12. Despite this precedent, Defendant denied the Bewleys certification, making them ineligible for competition in intercollegiate athletics for Chicago State.

13. The Bewleys attended high school at OTE and played for OTE as teammates of Mr. Dillingham.

14. The Bewleys had the same duties and obligations as Mr. Dillingham under their respective contracts with OTE.[3]

---

[1] See Name | Image | Likeness Interim NIL Policy, ncaa.org, July 2021, https://ncaaorg.s3.amazonaws.com/ncaa/NIL/NIL_InterimPolicy.pdf (last visited October 24, 2023).

[2] Upon information and belief, the NCAA has certified Stanford freshman and former OTE player, Kanaan Carlyle as eligible to compete in intercollegiate athletics.

[3] Plaintiffs intend to file copies of the respective contracts as exhibits upon receipt of the Court's leave to file said

15. The Bewleys' compensation was comparable to Mr. Dillingham's.

16. Yet, in its Final Non-Qualifier Status document, the NCAA denies the Bewleys eligibility largely based on the compensation they received in exchange for use of their name, image, and likeness ("NIL").

17. The NCAA's actions toward the Bewleys are not only in conflict with its prior decisions regarding other OTE athletes and its own interim policy on NIL. The decision is in direct conflict with the Illinois Student-Athlete Endorsement Rights Act, which states in relevant part,

> "Compensation from the use of a student-athlete's name, image, likeness, or voice may not affect the student-athlete's scholarship eligibility, grant-in-aid, or other financial aid, awards or benefits, or the student-athlete's intercollegiate athletic eligibility…
>
> …the National Collegiate Athletic Association, the National Association of Intercollegiate Athletics, and the National Junior College Athletic Association, shall not prevent, or otherwise enforce a contract, rule, regulation, standard, or other requirement that prevents a student-athlete at a postsecondary educational institution from earning compensation as a result of the use of the student-athlete's name, image, likeness, or voice." 110 ILCS 190/15

18. Further, the NCAA bylaws which seek to limit the compensation prospective student-athletes may receive and who they may receive it from are unreasonable restraints of trade in violation of federal antitrust laws.

19. Similarly, the NCAA's enforcement of bylaws which exclude prospective student-athletes that have received certain compensation from participating in intercollegiate athletics is an unlawful group boycott / refusal to deal in violation of federal antitrust laws.

---

exhibits under seal. Plaintiffs are required to do so pursuant the confidentiality clause in the contracts.

20. For these reasons, Plaintiffs seek immediate injunctive relief to prevent further irreparable harm as a result of being excluded from intercollegiate athletics, including but not limited to the inability to participate in the team's upcoming games, the loss of continued NIL income, the loss of scholarships and other educational benefits and aid.

## PARTIES

21. Plaintiff, Matthew Bewley is a natural person residing in the State of Illinois.

22. Plaintiff, Ryan Bewley is a natural person residing in the State of Illinois.

23. Defendant, NCAA is an unincorporated association with its principal place of business located at 700 West Washington Street, Indianapolis, Indiana 46206. Defendant, NCAA is not organized under the laws of any State, but is registered as a tax-exempt organization with the Internal Revenue Service. As such, Defendant, NCAA is a citizen of the State of Indiana pursuant to 28 U.S.C. 1332(d)(10). Defendant NCAA conducts business throughout this District, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because (a) at least one Plaintiff is a citizen of a state different from Defendant and (b) the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

25. Additionally, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation), as this action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. 28 U.S.C. §§ 15(a) and 26.

26. This Court has personal jurisdiction over Defendant because it conducts significant business in this District, including regulating and organizing intercollegiate athletics in this District and because the unlawful conduct alleged in the Complaint occurred in, was directed at, and/or emanated in part from this District. Further, numerous NCAA Division I universities or colleges are found within this District, including Chicago State University, where Plaintiffs are enrolled.

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in and/or emanated from this District.

## FACTUAL ALLEGATIONS
(State Law)

28. On June 21, 2021, The Supreme Court of the United States issued its opinion in *NCAA v. Alston*, 141 S. Ct. 2141 (2021), finding that Defendant's restraints on education-related benefits were Sherman Act violations.[4] In a concurring opinion, Justice Kavanaugh wrote that the NCAA's remaining compensation rules (i.e., those not at issue in *Alston*) "may lack" a legally valid procompetitive justification, that its "current compensation regime raises serious questions under the antitrust laws," and reiterated that the "NCAA is not above the law."[5]

29. On July 1, 2021, several states, including Illinois and Georgia, where the Bewleys attended high school, enacted state legislation in support of individuals' NIL rights.[6]

---

[4] *See Alston*, 141 S. Ct. at 2155-2160, 2166.

[5] *Id.* at 2166-69 (Kavanaugh, J., concurring).

[6] *See* O.C.G.A. Title 20, Ch. 3, Art. 13 and 110 ILCS 190/15

30. As discussed above, in the face of these developments in the legal landscape, Defendant adopted its new, "interim" NIL policy, which was announced on June 30, 2021 and became effective on July 1, 2021. That policy temporarily suspended enforcement of many of the NCAA's NIL restraints on compensation and allowed prospective and current student-athletes to pursue compensation for the use of their NIL in accordance with applicable state laws without jeopardizing their NCAA eligibility.

31. Also on July 1, 2021, in accordance with the applicable laws of the State of Georgia, the Overtime Elite League Uniform Player Contract (hereinafter "Uniform Player Contract") between the Bewleys and OTE went into effect.

32. Based on the intent and purpose of the Uniform Player Contract, the Bewleys agreed to an athletic scholarship to cover education based expenses while they matriculated through high school and assigned their NIL rights to OTE for the term of the Contract in exchange for monetary compensation.

33. The Bewleys, like any other United States citizens, have ownership over their name, image, and likeness rights and were permitted by law to freely contract for the use of those rights, including in the Uniform Player Contract with OTE.

34. The Bewleys right to publicity is supported by Georgia common law.

35. There were no provisions of Georgia statutory law that abridged this common law right as it pertains to the Bewleys.

36. There were no provisions of Georgia law that prohibited the Uniform Player Contract.

37. Because the Uniform Player Contract is not prohibited by Georgia law, it aligns with the NCAA's interim policy, which permitted NIL deals in accordance with the laws of each respective state.

38. In May 2022, the NCAA released additional guidance regarding the permissible structure of NIL deals.[7]

39. OTE subsequently adjusted the language of its player contracts to align with the newly released guidance.

40. Although OTE made alterations to the contract language including titles, definitions, and headings, the duties and obligations of players and player compensation remained intact.

41. The Bewleys competed for OTE during the 2021-2022 and 2022-2023 seasons.

42. In May 2023, the Bewleys graduated from OTE Academy.

43. In June 2023, the Bewleys accepted athletic scholarships to attend Chicago State University.

44. In June of 2023, the Bewleys applied for amateurism certification as well as sent a letter to Gary deCastro, the Managing Director of the NCAA Eligibility Center, to express their intentions to begin the NCAA amateurism certification process.

---

[7] *See Interim Name, Image and Likeness Policy Guidance Regarding Third Party Involvement,* ncaa.org, May 2022 https://ncaaorg.s3.amazonaws.com/ncaa/NIL/May2022NIL_Guidance.pdf (last visited October 24, 2023).

45. Within 24 hours, the Compliance Director at Chicago State University received notice from the NCAA stating that the Bewleys would most likely be ruled as non-certified to compete in intercollegiate athletics.

46. On or about July 25, 2023, the Bewleys and Chicago State University received a communication from the NCAA, stating that upon review of their contracts with OTE, the NCAA maintained its belief that the Bewleys would not be certified to compete in intercollegiate athletics.

47. The NCAA cited the following alleged justifications for its preliminary determination that the Bewleys were ineligible to compete in intercollegiate athletics:

   a) The Bewleys OTE compensation exceeded actual and necessary expenses;

   b) The Bewleys competed for a team that considered itself professional;

   c) The Bewleys competed with and against professionals.

48. On October 31, 2023, Defendant reasserted these justifications in its Final Non-Qualifier Status document.

49. Yet these justifications are inconsistent with its prior rulings regarding former OTE athletes who competed on the same teams, against the same competition, and received the same compensation.

50. In fact, NCAA Bylaw 12.2.3.2., specifically permits prospective student-athletes to play for professional teams against other professionals prior to enrolling in a member

9

institution and the NCAA's interim policy on NIL specifically permits prospective student athletes to be compensated for use of their NIL.

51. None of the NCAA's justifications for excluding the Bewleys from collegiate athletics can withstand judicial scrutiny under its own bylaws or the applicable state and federal laws.

52. Defendant's actions are in direct violation of the Illinois Student-Athlete Endorsement Rights Act.

## FACTUAL ALLEGATIONS
(Federal Law)

53. Plaintiffs maintain their respective contracts with OTE were permissible NIL contracts under applicable state laws. However, even if this court finds to the contrary, Defendant's enforcement of rules restricting other compensation for prospective student-athletes is contrary to federal antitrust law.

54. In the wake of the NCAA's interim policy, Defendant has continued to enforce its anti-competitive policies against compensation it unilaterally deems as "pay for play."

55. Under the guise of Defendant's prohibition of pay for play, NCAA Bylaw 12.2.3.2.1 specifically limits the compensation a prospective student-athlete may receive from their participation on a "professional team" to "actual and necessary expenses." *See* August 25, 2023 NCAA Communication, attached hereto as Exhibit B.

56. If a prospective student-athlete receives any amount above what Defendant deems to be actual and necessary expenses, the NCAA proposes that it has a right to permanently exclude the prospective student-athlete from intercollegiate athletic competition.

57. Based on its prior communications with the Bewleys and Chicago State University, Defendant has made the arbitrary determination that the Bewleys received compensation from a professional team that was above the NCAA's threshold of actual and necessary while their teammates who received similar compensation from the same team were permissibly compensated in exchange for use of their NIL.

58. This distinction inexplicably fails to acknowledge the portion of the Bewleys' compensation that was received in exchange for their NIL rights.

59. This distinction is not only arbitrary, it is an unlawful restraint of trade in violation of Section I of the Sherman Act.

60. NCAA Bylaw 12.2.3.2.1 is an artificial wage cap enforced on young athletes who aspire to compete in intercollegiate athletics. This bylaw prevents aspiring student athletes from earning compensation from teams beyond the amounts the NCAA deems actual and necessary expenses.

61. Further, the NCAA's policy excluding all aspiring student-athletes that do earn compensation beyond this threshold from intercollegiate athletics is an unlawful group boycott / refusal to deal in violation of Section I of the Sherman Act.

96968\315051553.v2

**IRREPARABLE HARM**

62. The NCAA's decision to bar the Bewleys from intercollegiate athletics has caused and will continue to cause irreparable harm including:

   a) <u>Loss of scholarships and related benefits including tuition, room and board, coaching, training, and the use of educational services, tutoring, etc.</u> – Like all athletic scholarships, the Bewleys respective scholarships are contingent upon their participation with Chicago State's basketball program. Pursuant to NCAA regulations, Chicago State's basketball program has a limited number of scholarships and is incapable of reserving scholarships for athletes that are deemed ineligible.

   b) <u>Inability to compete at the highest level of competition for basketball prospects in their age bracket</u> – Collegiate sports provide the best coaching, training, and exposure for aspiring basketball players who have graduated from high school but are not ready or are not eligible to be drafted in the NBA.[8]

   c) <u>Loss of access to NIL endorsement opportunities reserved for collegiate athletes</u> – Since the introduction of the NCAA's interim NIL policy, a billion dollar endorsement market has emerged for college athletes. These opportunities would be significantly reduced if not totally eliminated for the Bewleys if they were deemed ineligible to play.

   d) <u>Damage to reputation</u> – The Bewleys would face significant stigma if they are branded as NCAA rule violators.

   e) <u>Damage to their NBA draft stock</u> – This ruling would require the Bewleys to miss out on the opportunity to participate in Division I collegiate basketball, by far the largest and most influential training ground for prospective NBA talent. By sitting out of competitive basketball for an entire season and/or joining an alternate league, the Bewleys will inevitably hurt their draft potential. The Bewleys would be barred from competing against top talent, depriving NBA scouts of the opportunity to evaluate how the Bewleys stack up against other top draft prospects.

**NO ADEQUATE REMEDY AT LAW**

63. Plaintiffs assert that no adequate remedy at law exists in relation to the harm alleged in the Complaint.

---

[8] Under the current NBA CBA, a player must be at least one year removed from the graduation of his high school class to be eligible for the NBA Draft.

64. No judgment for monetary damages can account for the lost opportunity to compete in intercollegiate athletics.

65. The damage to Plaintiffs' reputations cannot be repaired by a judgment for monetary damages.

66. The diminishment to Plaintiffs' professional basketball prospects cannot be repaired by a judgement of monetary damages.

## CAUSES OF ACTION

### COUNT I
### Violation of Illinois Statue 110 ILCS 190/15(a)

67. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

68. Plaintiffs maintain an implied right of action to enforce 110 ILCS 190/15 pursuant to Illinois common law. *See Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 308 (1992).

69. Plaintiff's also maintain a right to declaratory relief under 28 U.S.C.A. §2201.

70. Defendant's ruling regarding the Bewleys' ineligibility to compete in intercollegiate athletic is a direct violation of the Section 15(a) of the Student-Athlete Endorsement Rights Act.

71. Defendant seeks to exclude the Bewleys from intercollegiate athletic eligibility as a result of compensation the Bewleys lawfully received in exchange for the use of their name, image, and likeness prior to enrolling in an NCAA member institution.

72. The Bewleys exclusion from intercollegiate athletics will cause irreparable harm to their ability to receive the myriad of benefits that coincide with intercollegiate athletics including but not limited to scholarships and other educational benefits and future compensation from NIL.

73. Plaintiffs are entitled to a permanent injunction preventing Defendant from enforcing its regulations that run afoul of the Student-Athlete Endorsement Rights Act.

## COUNT II
### Violation of Section 1 of the Sherman Act – 15 U.S.C. § 1 Unreasonable Restraint of Trade

74. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

75. Defendant, in conjunction with its member institutions, has entered into a continuing horizontal and vertical contract, combination, and conspiracy in restraint of trade in the relevant markets to artificially depress, fix, maintain, and/or stabilize the prices paid to prospective student-athletes like the Bewleys for their participation in athletics and the use of their NIL, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

76. In particular, NCAA Bylaw 12.2.3.2.1 unlawfully restricts the compensation a prospective student-athlete may receive for his or her participation on a professional team or other league prior to enrolling in an NCAA member institution.

77. As a direct and proximate result of Defendant's enforcement of its bylaws, the Bewleys will be irreparably injured and financially damaged. Their impending injuries center around their inability to compete in intercollegiate athletics and include the loss of the educational and economic benefits that are associated with collegiate athletics. The Bewleys

14

impending injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendant's conduct unlawful.

78. Defendant illegally limited and depressed the compensation to prospective student-athletes for their athletic ability and the use of their NIL. This anticompetitive and illegal scheme has unreasonably restrained trade.

79. The anticompetitive effects of Defendant's policies substantially outweigh any alleged procompetitive effects that may be offered by Defendant, including that their conduct is mandated by the NCAA's concept of "amateurism." Moreover, reasonable and less restrictive alternatives are available to Defendant's current anticompetitive practices.

80. The amount of damages suffered by the Bewleys has not yet been ascertained. Pursuant to Section 4 of the Clayton Act, Plaintiffs are entitled to recover from Defendant treble the amount of actual damages, as well as an award of reasonable attorneys' fees and costs of suit.

81. Plaintiffs are entitled to a permanent injunction that prevents the violations of law alleged in this Complaint.

### COUNT III
### Violation of Section 1 of the Sherman Act – 15 U.S.C. § 1 Unreasonable Restraint of Trade – Group Boycott / Refusal to Deal

82. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

83. Defendant by and through its officers, directors, employees, agents, or other representatives, entered into a continuing horizontal and vertical contract, combination, and conspiracy in restraint of trade to effectuate a horizontal group boycott of prospective student-

athletes like the Bewleys. Defendant's group boycott/refusal to deal consists of (1) Defendant's acts to prevent prospective student-athletes from being freely compensated for their participation in athletics and use of their images, likenesses and/or names and/or (2) Defendant's exclusion of prospective student-athletes that have received compensation above its "actual and necessary" threshold from intercollegiate athletics, in the United States and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

84. Defendant's group boycott/refusal to deal includes Defendant's concerted action to require all prospective and current student-athletes to abide by regulations and bylaws that purport to impose limitations on their right to be compensated for their labor and limit their rights related to the use of their images, likenesses and/or names. This concerted action is in effect a refusal to deal with the Bewleys and other similarly situated prospective student-athletes on compensation rights issues, and forecloses them from full access to the marketplace. Defendant uses the eligibility rules as a threat of a boycott to force all prospective student-athletes to abide by their rules, even before they have enrolled at a member institution.

85. As a direct and proximate result of Defendant's group boycott, the Bewleys will be injured and financially damaged. Plaintiffs' injuries consist of exclusion from participation in intercollegiate athletics and the loss of associated educational and economic benefits. Plaintiffs' injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendant's conduct unlawful.

86. The anticompetitive effects of Defendant's group boycott substantially outweigh any alleged procompetitive effects that may be offered by Defendant, including that their conduct is mandated by the NCAA's concept of "amateurism" or any procompetitive purpose.

96968\315051553.v2

Moreover, reasonable and less restrictive alternatives are available to Defendant's current anticompetitive practices.

87. The amount of damages suffered by the Bewleys has not yet been ascertained. Pursuant to Section 4 of the Clayton Act, Plaintiffs are entitled to recover from Defendant treble the amount of actual damages, as well as an award of reasonable attorneys' fees and costs of suit.

88. Plaintiffs are entitled to a permanent injunction that prevents the impending violations alleged in this Complaint.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

A. For actual damages according to the proof at trial;

B. For treble damages pursuant to 15 U.S.C. § 15;

C. For a declaratory judgment declaring as void the NCAA's Bylaws that operate to impose a restriction on the compensation prospective student-athletes can receive prior to enrolling in its member institutions;

D. For an injunction restraining the NCAA from enforcing their unlawful and anticompetitive regulations excluding Plaintiffs from intercollegiate athletics;

E. For Plaintiffs' attorneys' fees, costs, and expenses; and

F. For other such relief that the Court may deem just and equitable.

96968\315051553.v2

**JURY DEMAND**

Plaintiffs hereby request a jury trial on any and all claims so triable.

                                                    Respectfully Submitted,

                                                    MATTHEW BEWLEY and RYAN BEWLEY

                                            By:   */s/Dominique Price*
                                                        One of their Attorneys

Dominique A. Price
Daniel McGrath
Marcos Reilly
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
(312) 704-3000
Attorney No.: 6315143

## VERIFICATION

I, Matthew Bewley, verify that I am a represented Plaintiff in this proceeding, and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true and (2) legal conclusions, for which I expressly defer to my legal counsel. I understand that knowingly false statements herein are subject to the penalties of 28 U.S.C. § 1746 relating to sworn declarations to authorities.

_____  11/1/2023
Matthew Bewley                    Date


I, Ryan Bewley, verify that I am a represented Plaintiff in this proceeding, and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true and (2) legal conclusions, for which I expressly defer to my legal counsel. I understand that knowingly false statements herein are subject to the penalties of 28 U.S.C. § 1746 relating to sworn declarations to authorities.

_____  11/1/2023
Ryan Bewley                       Date

96968\315051553.v2