# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MATTHEW BEWLEY and RYAN BEWLEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 1:23-cv-15570 |
| ) | Hon. Robert W. Gettleman |
| NATIONAL COLLEGIATE ATHLETIC ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S
## SUR-REPLY TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
## AND OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER

Patricia Brown Holmes
Brian O. Watson
Matthew A. Blumenreich
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
pholmes@rshc-law.com
bwatson@rshc-law.com
mblumenreich@rshc-law.com
docketdept@rshc-law.com

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    Plaintiffs' Motion to Reconsider Should Be Denied..…………………………….. 3

    II.    Plaintiffs' Motion for Preliminary Injunction Should Be Denied…………………. 3

        A.    There Is No Likelihood of Success on the Merits of Plaintiffs' Purported Illinois NIL Claim………………………….………...................... 4

        B.    There Is No Likelihood of Success on the Merits of Plaintiffs' Purported Federal Antitrust Claims..…………………………………....……… 5

        C.    Plaintiffs Have Failed to Satisfy Their Burden of Showing Irreparable Harm……………………………………………………………. 6

        D.    Plaintiffs Have Failed to Establish That There Is No Adequate Remedy at Law…………………………………………………..................... 8

        E.    The Balance of Hardships and Public Interest Does Not Favor Injunctive Relief……………………………………………………………… 9

        F.    Administrative Remedies Have Not Been Exhausted………………………… 9

CONCLUSION................................................................................................................... 10

## INTRODUCTION

Plaintiffs' new arguments do not change the reason why a temporary restraining order or preliminary injunction is inappropriate: there is *no* likelihood of success on the merits. The Court rightly made this finding from the very face of Plaintiffs' professional employment contracts. Ex. A, Hr'g Tr. at 40-41, Nov. 14, 2023 ("I'm finding that there is no likelihood of success here. And even on a sliding scale, I think it's so strong[.]… I just think the contract that they signed is so strong and is such clear -- and is so clearly an employment contract with a professional league that there's very, very little chance of succeeding on that claim."). And despite the Court's invitation more than a month ago, Plaintiffs have sought no discovery from the NCAA or anyone else that could change this finding. *Id.* at 42 ("[Y]ou have a motion for preliminary injunction. I don't know if you want to do some discovery and see maybe if there's something that you could discover that might change that result.").

The Court got it right, and nothing has changed. The NCAA's Eligibility Center found Plaintiffs ineligible because of their professional employment contracts, *not* NIL compensation. Plaintiffs' desire to re-argue the exact same case law and professional employment contracts with the Court cannot justify a temporary restraining order, preliminary injunction, or reconsideration. None of their arguments show that the Court was somehow mistaken—let alone committed a manifest error—in carefully reviewing the terms of the contracts, hearing all of the evidence and arguments over nearly two hours, and finding that there is no likelihood of success. Nor do they present any new evidence on the merits of their claims. Plaintiffs' motion for a preliminary injunction (ECF No. 25) and motion to reconsider (ECF No. 26) therefore should be denied.

## LEGAL STANDARD

"The Court has the inherent authority to reconsider its interlocutory orders … because such orders may be 'revised at any time before the entry of judgment adjudicating all the

1

claims.'" *Brodsky v. HumanaDental Ins. Co.*, No. 1:10-cv-03233, 2016 WL 9212001, at *1 (N.D. Ill. Oct. 17, 2016) (quoting Fed. R. Civ. P. 54). "[A] motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or party's contention that the court ruled on an issue that was not properly before it." *Id.*; *River Vill. W. LLC v. Peoples Gas Light and Coke Co.*, 618 F. Supp. 2d 847, 850 (N.D. Ill. 2008) ("A court will grant a motion for reconsideration when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court.").

"To obtain a preliminary injunction, the moving party must show that (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016). After the moving party carries this burden, the court then "weighs the competing harms to the parties if an injunction is granted or denied, considers the public interest, and employs a sliding-scale analysis (the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor)." *Id.* (quotation marks and citation omitted). Because preliminary injunctions "are extraordinary and drastic remedies," the moving party must carry this burden "'by a clear showing.'" *Elim Romanian Pentecostal Church v. Pritzker*, 613 F. Supp. 3d 1102, 1107 (N.D. Ill. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

2

**ARGUMENT**

I.  **Plaintiffs' Motion to Reconsider Should Be Denied.**

Plaintiffs improperly seek to reconsider the denial of a temporary restraining order because their motion "raises a number of arguments for the first time." ECF No. 27; *Brodsky*, 2016 WL 9212001, at *1 (a motion to reconsider "serves a limited purpose, and it is not a vehicle to merely rehash an argument the court has already rejected or to present legal arguments that were not presented earlier"). Plaintiffs point to no legal or factual arguments that the Court misunderstood, or that could otherwise support reconsideration. *River Vill. W. LLC*, 618 F. Supp. 2d at 850. Plaintiffs also provide no change in the facts; indeed, their submitted evidence as to the merits predates the hearing. ECF No. 25-1 at Ex. A (Dillingham, Karlye, and Bewley contract comparison), Ex. C (Representative Buckner's statement on legislation),[1] Ex. D (Chicago State scholarship agreement), Exs. E & F (declarations on harm, not merits). Plaintiffs' motion to reconsider therefore should be denied.

II. **Plaintiffs' Motion for Preliminary Injunction Should Be Denied.**

Plaintiffs' motion for preliminary injunction likewise fails because it misapprehends the Eligibility Center's initial determination and this Court's reasoning. Ex. A at 40-41. Plaintiffs were found ineligible because of their professional employment contracts with the Overtime Elite League ("Overtime Elite"), *not* NIL compensation. ECF No. 18 ¶ 24, Exs. F & G at p. 1. NCAA rules make clear that an individual shall not be eligible to compete in a college sport if

---

[1] Plaintiffs' reliance on Representative Buckner's affidavit is misplaced. *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) ("Plaintiffs responded … with affidavits of legislators who supported the statute, but those views, offered away from the legislative halls and long after the law's enactment, are worthless."); *Morel v. Coronet Ins.*, 117 Ill. 2d 18, 25 (1987) ("Affidavits of individual legislators as to the meaning of specific legislation, therefore, do not constitute meaningful evidence of legislative intent.").

3

they enter into an agreement to play on a professional team in that sport for payment in excess of actual and necessary expenses. *Id.*; ECF No. 18-9, NCAA DI Bylaws 12.1.2, 12.2.3.2, & 12.2.5. As the Court held, because the Plaintiffs' contracts are "so clearly an employment contract with a professional league" in violation of the NCAA rules, there is no likelihood of success on the merits of Plaintiffs' claims. Ex. A at 40-41.

Plaintiffs' new arguments try to twist this straightforward conclusion. They mistakenly assert that "the NCAA's argument in opposition to Plaintiffs' motion is that the Bewleys[] received $0 for the NIL activities they were required to perform under their contract. [The NCAA] claims the entirety of the compensation the Bewleys received was for playing basketball, and a portion of that compensation was in excess of 'actual and necessary expenses.'" ECF No. 25 at 1. Not so. As the Court explained at length, Plaintiffs' professional employment contracts went far beyond NIL compensation: "You're saying that this is really an NIL contract. In my view, it's not. It's an employment contract. I think it's very clear. It's much more than just an NIL contract. It includes NIL, but it's a lot more than just that, as counsel has stated." Ex. A at 41. That finding alone disposes of Plaintiffs' motion.

### A. There Is No Likelihood of Success on the Merits of Plaintiffs' Purported Illinois NIL Claim.

The Court rightly ruled that there is no likelihood of success on the merits of Plaintiffs' purported Illinois NIL claim because of their professional employment contracts. Ex. A at 40-41. Plaintiffs' new arguments just disregard the Court's reasoning and claim that "the primary legal question related to Plaintiffs' state law claim is *what portion* of their overall compensation package was 'from the use of a student-athlete's name, image, likeness, or voice' pursuant to the express language of the Student-Athlete Endorsement Rights Act." ECF No. 25 at 5 (emphasis added). But Plaintiffs miss the point.

4

The Eligibility Center did not find Plaintiffs ineligible because of NIL compensation. Instead, Plaintiffs admittedly played professional basketball in a professional league under signed professional employment contracts with professional compensation far above actual and necessary expenses—including substantial salaries, performance bonuses, equity, and other employment benefits—which are way beyond NIL. That broader compensation defeats Plaintiffs' claim. 110 ILCS 190/15(a) ("Compensation from the use of a student-athlete's name, image, likeness, or voice may not affect … the student-athlete's intercollegiate athletic eligibility").

Plaintiffs also devote much attention to Overtime Elite's status as a professional team. They argue that the Illinois NIL statute does not prohibit participation on a professional team, but that fact is irrelevant to Plaintiffs' professional employment (and non-NIL) duties and compensation that went far beyond their actual and necessary expenses under the NCAA rules. ECF No. 25 at 3-4. Plaintiffs also re-argue the comparisons between their professional employment contracts and the Overtime Elite NIL contracts signed by their former teammates, Robert Dillingham and Kanaan Carlyle. *Id.* at 7-9. As the Court explained, those contracts do not, and cannot, change the plain terms of *the Plaintiffs'* professional employment contracts. Ex. A at 39-40 ("[T]hat doesn't really change the contract that the plaintiffs signed here, which is an employment contract. I think it's just plain as day."). Thus, Plaintiffs still have no likelihood of success on the merits for their NIL claim.

**B.    There Is No Likelihood of Success on the Merits of Plaintiffs' Purported Federal Antitrust Claims.**

Plaintiffs previously represented that they are not seeking injunctive relief on their purported federal antitrust claims. *Id.* at 22. The Court also noted that "the antitrust issues are much more complicated and probably deserve a lot more discovery and other proceedings than

5

we will get into today." *Id.* at 22-23. Despite Plaintiffs' prior representation to the Court and their failure to conduct any discovery or present any evidence, Plaintiffs now suggest that they have a likelihood of success on their alleged unreasonable restraint of trade claim.[2]

Plaintiffs' motion makes no effort whatsoever to satisfy the elements of this antitrust claim. Instead, they entirely rely on *NCAA v. Alston*, 141 S. Ct. 2141 (2021), and *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019). But these cases support the NCAA, not Plaintiffs. In *Alston*, the Supreme Court upheld the long-standing respect for the non-professional ideal, finding that courts should "not blur the distinction between college and professional sports." 141 S. Ct. at 2164. *In re Nat'l Collegiate Athletic Ass'n* likewise cuts against Plaintiffs, who overlook the Ninth Circuit's confirmation that the NCAA "[r]ules that prevent unlimited payments—unrelated to education and akin to salaries seen in professional sports leagues—serve the procompetitive end of distinguishing college from professional sports." 958 F.3d 1239, 1264 (9th Cir. 2020) (quotation marks and citation omitted) (alteration in original).

Accordingly, Plaintiffs still have not pled, argued, or set forth evidence to show a likelihood of success on their purported unreasonable restraint of trade claim. *See Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 893 (N.D. Ill. 2009).

### C. Plaintiffs Have Failed to Satisfy Their Burden of Showing Irreparable Harm.

Plaintiffs have not carried their burden that they will suffer irreparable harm. Plaintiffs' motion again argues in conclusory fashion that "being declared permanently ineligible to compete in intercollegiate athletics will cause them irreparable harm" and that "[i]n their Complaint, the Plaintiffs listed several types of irreparable harm including loss of the ability to

---

[2] Plaintiffs again raise no arguments with respect to the purported unlawful group boycott claim.

compete in intercollegiate athletics, the loss of their scholarships and related educational benefits, the loss of NIL opportunities, and damage to their NBA draft stock and reputation." ECF No. 25 at 11.

As to Plaintiffs' ineligibility, any alleged harm is not irreparable. Plaintiffs would have the same amount and years of eligibility to play college sports, regardless of a preliminary injunction. As to their other alleged irreparable harm, the limited evidence submitted by Plaintiffs does not carry the heavy burden for injunctive relief. Plaintiffs speculate that their scholarships will be revoked, they will lose "all educational and economic benefits associated with their scholarships," and they will miss "NIL opportunities associated with competing in intercollegiate athletics." ECF No. 4 at 14. But Plaintiffs submit no evidence—via declaration or otherwise—to suggest that Chicago State will revoke their scholarships or that Plaintiffs will otherwise lose the educational and economic benefits from Chicago State. Nothing in the record suggests that Chicago State has told Plaintiffs that they will lose their scholarships.

Plaintiffs also submit no evidence that they have missed, or will miss, any NIL opportunities. The law is clear that the type of speculation advanced by Plaintiffs cannot show likely and imminent irreparable harm. *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 664 (7th Cir. 2007) ("[S]peculation does not rise to the level of irreparable harm that would justify the intervention of a federal court."); *Saukstelis v. City of Chicago*, No. 89 C 9268, 1990 WL 146711, at *8 (N.D. Ill. Oct. 3, 1990) (denying preliminary injunction when there is an "absence of proof supporting movants' assertions of imminent irreparable harm").

Plaintiffs' alleged irreparable harm as to their NBA draft stock and reputation similarly fails.[3] Plaintiffs' former NBA scout's declaration speculates that "being permanently banned from intercollegiate athletics *can* harm an aspiring professional basketball player's opportunities for development and exposure in the industry," while the NBA agent's declaration merely states that "the inability to compete in collegiate basketball severely damages the careers of prospective professional basketball players in the United States by reducing their exposure and opportunities to be evaluated[.]" ECF No. 25-1 at Exs. E and F (emphasis added). There is no evidence that any NBA team, NBA team representative, NBA scout, or NBA agent has determined (or even expressed concern) that *Plaintiffs'* ineligibility has damaged *their* NBA draft stock or reputation.

> **D. Plaintiffs Have Failed to Establish That There Is No Adequate Remedy at Law.**

Plaintiffs' motion once again fails to show the absence of an adequate remedy at law. Indeed, despite this deficiency in their motion for a temporary restraining order, Plaintiffs still offer no evidence or argument about inadequacy of a remedy, and their allegations fall short. *Roland Mach. Co. v. Dresser Indust., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("[I]mplying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief."). Again, no matter the preliminary outcome here, Plaintiffs would have the same amount and years of eligibility to play college sports, and they have not shown "that an award of money damages will not be adequate." *Health o Meter, Inc. v. Terraillon Corp.*, 873 F. Supp. 1160, 1175 (N.D. Ill. 1995).

---

[3] Somewhat inconsistently, in its December 7, 2023 administrative appeal, Chicago State suggests that Plaintiffs "are eager to earn degrees" and "are looking forward to being the first college graduates in their families," and not enter the NBA draft. Ex. B, at p. 2.

### E. The Balance of Hardships and Public Interest Does Not Favor Injunctive Relief.

As the Court has held, there is "no likelihood of success" on the merits, and because Plaintiffs' contracts are clearly professional employment agreements, "even on a sliding scale … there's very, very little chance of succeeding on that claim." Ex. A at 40-41. But Plaintiffs dismiss the Court's ruling out of hand, arguing that "[t]he only potential harm to Defendant is if the NCAA is successful on the merits at some point after the Court enters a TRO, the plaintiffs may have participated in competitions when ineligible." ECF No. 25 at 12. This argument makes no sense. The harm to the NCAA and the public is more than allowing Plaintiffs to participate in collegiate competition, as the distinction between college and professional sports—to which Chicago State and all other Division I schools have been committed to—would be destroyed. The balance thus favors the NCAA, not Plaintiffs. *See Alston*, 141 S. Ct. at 2164 (courts should "not blur the distinction between college and professional sports and thus impair demand" from consumers for college sports).

### F. Administrative Remedies Have Not Been Exhausted.

Plaintiffs' injunctive relief request ultimately remains premature because their administrative remedies have continued with Chicago State and the NCAA's administrative process. "It is not within the province of the court to short circuit the administrative process when as here that process is fully capable of remedying the wrong alleged." *Dunsworth v. Lane*, No. 87 C 7625, 1988 WL 56181, at *3 (N.D. Ill. May 23, 1988) (denying temporary restraining order for failure to exhaust administrative remedies); *see also N.S. by and through Meg S. v. Bd. of Ed. of City of Chicago*, No. 19 C 5699, 2019 WL 4166871, at *2 (N.D. Ill. Sept. 3, 2019) (denying injunctive relief when the plaintiff "failed to exhaust his administrative remedies prior

9

to filing"); *Baca-Prieto v. I.N.S.*, No. 92 C 2485, 1992 WL 245550, at *4 (N.D. Ill. Sept. 18, 1992) (same).

Plaintiffs argue that the Court should ignore this clear precedent because Chicago State (not Plaintiffs themselves) has exercised the administrative remedies with the NCAA on their behalf. But Plaintiffs cite no cases that excuse exhaustion of administrative remedies simply because a third-party holds the right to pursue the administrative remedies on their behalf. Plaintiffs, Chicago State, and the NCAA have appropriately continued the administrative reinstatement process, which is, after all, member created and led,[4] and Plaintiffs provide no evidence that the administrative remedies have been exhausted. Accordingly, Plaintiffs' request for injunctive relief should be denied as premature.

## CONCLUSION

For these reasons, the NCAA requests that the Court deny Plaintiffs' motion for preliminary injunction and Plaintiffs' motion to reconsider and grant the NCAA any other relief that the Court deems just and proper.

---

[4] Chicago State waited until November 7, 2023—after the lawsuit was filed—to submit a request to the NCAA to seek reinstatement of Plaintiffs. After careful and through review, the NCAA denied reinstatement. Chicago State then waited until December 7, 2023 to file an appeal of the reinstatement denial. *See* Ex. B.

10

Dated:  December 29, 2023

Respectfully submitted,

*/s/ Patricia Brown Holmes*
Patricia Brown Holmes
Brian O. Watson
Matthew A. Blumenreich
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
pholmes@rshc-law.com
bwatson@rshc-law.com
mblumenreich@rshc-law.com
docketdept@rshc-law.com

*Attorneys for National Collegiate Athletic Association*